UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT RALPH CATANA,

        Plaintiff,                           Civil Action No. 10-cv-12376

     v.                                  District Judge Nancy G. Edmunds
                                                Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [10, 14]**

       Plaintiff Robert Ralph Catana brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. Both parties filed summary judgment motions (Dkts. 10, 14), which are presently before this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) (Dkts. 3, 11).

**I.  RECOMMENDATION**

       For the reasons set forth below, this Court finds that while the ALJ failed to fully comply with the procedural requirements of the treating source rule, this error was harmless. Accordingly, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED, that Defendant's Motion for Summary Judgment be GRANTED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner be AFFIRMED.

## II. REPORT

### A. Procedural History

Plaintiff filed an application for disability on March 22, 2006, alleging that he became unable to work on July 31, 2002. (Tr. 18.)  The Commissioner initially denied Plaintiff's disability application on May 16, 2006. (Tr. 54-58.)  Plaintiff then filed a request for a hearing, and on June 4, 2008, he appeared with counsel before Administrative Law Judge ("ALJ") Melvyn Kalt, who considered the case *de novo*.  (Tr. 33-52.)  In an August 28, 2008 decision, the ALJ found that Plaintiff was not disabled.  (Tr. 12-20.)  The ALJ's decision became the final decision of the Commissioner on April 20, 2010 when the Appeals Council denied Plaintiff's request for review. (Tr. 1-3.)  Plaintiff filed this suit on June 16, 2010.

### B. Background

Plaintiff was 65 years old at the time of the administrative hearing in this matter.  (Tr. 36.) He has a high school education.  (Tr. 37.)  He worked as a roofer until July 31, 2002.  (Tr. 37.)

#### *1. Plaintiff's Testimony*

At the June 4, 2008 hearing before the ALJ, Plaintiff testified regarding an accident that resulted in the partial amputation of his right thumb.[1]  (Tr. 38.)  He testified to not being able to use his right thumb at all.  (Tr. 46.)

Despite this testimony, Plaintiff admitted to being able to lift "30, 40 pounds" and being able to write.  (Tr. 41, 46.)  He also testified to being able to care for himself.  (Tr. 42.)  He stated he had

---

[1] Plaintiff also testified to a back condition, but this condition did not materialize by the date Plaintiff was last covered by disability insurance, or date last insured, March 31, 2003.  (Tr. 17, 39-42, 132.)  Plaintiff also testified to gastrointestinal problems, but these problems did not last over one year as required by the Act.  (Tr. 190.)  Therefore, the Court does not address these conditions.

2

difficulties standing, sitting, and walking due to back pain unrelated to his thumb. (Tr. 41-2) On a typical day he tries "to meet some friends at a bar and have a drink or something or go watch a hockey game someplace." (Tr. 44.)

   *2. Medical Evidence*

On July 31, 2002, Plaintiff was admitted to Mount Clemens General Hospital with an "acute partial amputation of the right thumb." (Tr. 173.) Plaintiff told the emergency room doctors that "he was unloading sheet metal when the sheet metal section started to fall." (Tr. 173.) A sharp edge on the sheet metal "lacerated his right thumb." (*Id.*) He admitted to "drinking a fair amount of alcohol" prior to the accident. (*Id.*) Indeed, his blood alcohol level was 205.5 mg/dl.[2] (Tr. 176). The doctors obtained x-rays of Plaintiff's thumb and cleaned the wound. (Tr. 174.) Surgeon Kevin Hanlon, D.O. evaluated Plaintiff's injury that same day. (*Id.*)

Plaintiff visited Dr. Hanlon again on August 13, 2002. (Tr. 207.) Dr. Hanlon reported that the thumb was "viable." (*Id.*) He recommended maintaining the "stitches for now" and starting a "soaking program." (*Id.*)

On August 20, 2002, Dr. Hanlon removed the stitches. (*Id.*) He also restricted Plaintiff to "no squeezing or pinching activities" at that time. (Tr. 207.)

Dr. Hanlon performed surgery on Plaintiff's thumb on August 21, 2002. (Tr. 187.) He performed a debridement of Plaintiff's open fracture and repaired the thumb's nail bed. (*Id.*) Plaintiff tolerated the procedure well. (Tr. 188.) Dr. Hanlon discharged him with antibiotics the same day. (*Id.*)

---

[2] This is over 2.5 times the level necessary to conclusively prove driving under the influence. M.C.L. § 257.625 (1)(a).

Plaintiff saw Dr. Hanlon again on September 3, 2002 regarding post-surgery issues with the pins in his thumb. (Tr. 206.) Dr. Hanlon recommended continuing the "soaking program." (*Id.*) In addition, Dr. Hanlon stated "[w]e adamantly are [sic] against him climbing on ladders. His risk of falling, having to use the hand to grab or support himself is too high. In fact we do not want him lifting or using the hand to any great extent." (*Id.*)

Dr. Hanlon evaluated Plaintiff again on October 1, 2002. (Tr. 206.) At that time one of the pins in Plaintiff's thumb was "protruding through the tip of the finger." (*Id.*)

Plaintiff did not see Dr. Hanlon in November or December, but returned to see him on January 10, 2003. (Tr. 204.) At that time, Dr. Hanlon removed the protruding pin from his thumb. (*Id.*)

Plaintiff next saw Dr. Hanlon on March 13, 2003 for "weakness and pain with any grip motion." (*Id.*) In his exam notes, Dr. Hanlon stated that "[h]e has two remaining pins, which on deep palpation are tender." (*Id.*) Dr. Hanlon stated that if the pins continue to bother him, then surgical removal would be recommended. (Tr. 205.) Dr. Hanlon also stated that Plaintiff should avoid pinching, gripping, lifting heavy objects more than 20-30 pounds, and climbing ladders. (*Id.*)

Plaintiff did not see Dr. Hanlon again for ten months. (Tr. 201.) On January 13, 2004, Plaintiff visited Dr. Hanlon with regard to two problems: his thumb and his back. (*Id.*) Dr. Hanlon stated that "most of his symptoms in the thumb are secondary to [the] retained pins." (*Id.*) Dr. Hanlon tentatively scheduled the removal of the pins. (Tr. 202.)

Plaintiff saw Dr. Hanlon again on February 12, 2004 to prepare for the proposed surgery to remove the pins. (Tr. 202.) Dr. Hanlon wrote: "No further questions of the thumb are noted. His main concern and problem today is the back." (Tr. 202.) Dr. Hanlon referred Plaintiff to another

doctor for his back problems. (*Id.*)

As of May 6, 2004, Plaintiff had not had the surgery to remove the pins. (Tr. 196.) However, even though Plaintiff had some "sensitivity" in the thumb, his primary reason for seeing Dr. Hanlon on that day was this disability claim. (Tr. 196.) Dr. Hanlon stated "[t]here is apparently some confusion on the extent of his disability." (*Id.*) Dr. Hanlon noted that on March 13, 2003, he put Plaintiff on "restrictions of no lifting more than 20-30 pounds, no ladders/climbing that put him at risk because of safety factors with gripping." (*Id.*) In his exam notes, Dr. Hanlon went on to write:

> He presents today with a disability form with confusion of dates of disability. He claims that he was unable to perform his duties as previously stated until September 2, 2003. He claims there is an error in completing the forms. The date written was September 2, 2002.
>
> * * *
>
> I feel it is reasonable to state he did have some disability and was restricted as of that date [September 2, 2003]. Although there is a great deal of time between March [the date of the original restrictions noted] and September date that he is claiming the disability. Clearly he had the pins in the finger and they caused him some difficulty with use of the right hand. A disability note is reissued today for September 2, 2003.

(Tr. 196-97.)

### 3. Vocational Expert's Testimony

Vocational Expert ("VE") Raymond Dulecki testified at the hearing. (Tr. 48.) The ALJ asked the VE to classify Plaintiff's past work by exertion and skill level. (Tr. 48.) The VE classified it as skilled work at the medium exertion level. (Tr. 50.) The VE also testified that if the Plaintiff's testimony was fully credited, Plaintiff would be unable to return to his past work. (*Id.*)

**C. Framework for Disability Determinations**

Under the Social Security Act (the "Act"), Disability Insurance Benefits (for qualifying wage earners who become disabled prior to expiration of their insured status) "are available only for those who have a 'disability.'" *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers

to the [defendant]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D. The Administrative Law Judge's Findings

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity "during the period from his alleged onset date of July 31, 2002 through his date last insured of March 31, 2003." (Tr. 18.) At step two, the ALJ found that Plaintiff had the following severe impairment: status post partial amputation and open reduction internal fixation of the right thumb. (Tr. 18.) Next, the ALJ concluded that none of these impairments, alone or in combination, met or medically equaled a listed impairment. (Tr. 18.) Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity to perform "a full range of medium work as defined in 20 C.F.R. § 404.1567(c)."[3] (Tr. 19.) At step four, the ALJ found that Plaintiff could perform his past relevant work as a roofer. (Tr. 20.)

### E. Standard of Review

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative

---

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects up to 25 pounds." 20 C.F.R. § 404.1567(c).

proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." (internal quotation marks omitted)). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). In deciding whether substantial evidence supports the ALJ's decision, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (internal quotation marks omitted)). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard

"presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

**F. Analysis**

> *1. The ALJ Failed to Fully Comply with the Procedural Requirements of the Treating Source Rule But the Failure was Harmless*

Plaintiff argues that the ALJ committed reversible legal error by failing to give the proper weight to Plaintiff's treating physician – Dr. Hanlon. (Dkt. 10, Pl.'s Mot. Summ. J. at 14.) Specifically, Plaintiff argues that it was improper for the ALJ to give controlling weight to Dr. Hanlon's opinion "through January 2003, but not thereafter." (*Id.*) The Commissioner responds that the ALJ's "approach was consistent with Dr. Hanlon's own understanding of the restrictions as interim measures." (Dkt. 10, Def.'s Mot. Summ. J. at 1.)

Under the treating source rule, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)); *see also* SSR 96-2p. And even where the ALJ finds that a treating physician's opinion is not entitled to controlling weight, he must apply the following non-exhaustive list of factors to determine how much weight to give the opinion: (1) "the length of the treatment relationship and the frequency of examination," (2) "the nature and extent of the treatment relationship," (3) the relevant evidence presented by a treating physician to support his opinion, (4) "consistency of the opinion with the record as a whole," and (5) "the specialization of the treating source." *Id.*; 20 C.F.R. § 404.1527.

This Regulation, 20 C.F.R. § 404.1527(d)(2), "contains a clear procedural requirement."

*Wilson*, 378 F.3d at 544. In particular, "the [ALJ's] decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188 at *5; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). Moreover, "a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

The Sixth Circuit has suggested, however, that a violation of the procedural requirement might be "harmless error" in the following circumstances: (1) "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) "the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or (3) "the Commissioner has met the goal of § 1527(d)(2) . . . even though [he] has not complied with the terms of the regulation." *Wilson*, 378 F.3d at 547. "In the last of these circumstances, the procedural protections at the heart of the rule may be met when the 'supportability' of a doctor's opinion, or its consistency with other evidence in the record, is *indirectly* attacked via an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments." *Friend*, 375 F. App'x at 551 (citing *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006)).

The ALJ here gave controlling weight to Dr. Hanlon's opinion up until January of 2003. The ALJ reasoned as follows:

> [Plaintiff's] hand surgeon, Dr. Hanlon, restricted the claimant to lifting 20 to 30 pounds, and no climbing, especially ladders, due to limited grip. This opinion was reiterated in May 2004. The undersigned finds this to have been appropriate for a limited time period, particularly considering that there was incomplete healing at least through October 1, 2002, but healing was complete by January 10, 2003. In January 2004, the claimant complained only of thumb stiffness, and Dr. Hanlon noted only limited flexion. Quite notably, in March 2004, the claimant told a Dr. Seo that he no longer went up on roofs due to his back and leg problems, not because of his inability to climb a ladder. Thus, Dr. Hanlon's opinion is accorded controlling weight through January 2003, but not thereafter. Thereafter, the opinion is not supported by the clinical findings or the claimant's own reports.

(Tr. 19)

The ALJ, however, did not indicate what weight he gave Dr. Hanlon's opinion after January 2003. (*Id.*) Plaintiff interprets this to mean that the ALJ gave Dr. Hanlon's opinion "no weight at all" after January 2003. (Dkt. 10, Pl.'s Mot. Summ. J. at 17.) Defendant argues that the ALJ gave Dr. Hanlon's opinion some weight "insofar as [he] restricted Plaintiff to medium work and rejected [his opinion] otherwise, for the reasons stated in his decision." (Dkt. 14, Def.s' Mot. Summ J. at 10.) These conflicting interpretations among the parties reveal that the ALJ did not "make clear to any subsequent reviewers the weight [he] gave to the treating source's [entire] medical opinion." SSR 96-2p, 1996 WL 374188 at *5; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). Accordingly, the next issue for this Court to address is whether the ALJ satisfied the *Wilson* exceptions to the treating physician procedural rule and, thus, his error was harmless.

As an initial matter, the Court finds that the ALJ did not satisfy the first two *Wilson* exceptions. Thus, this Court must address whether the ALJ satisfied the third exception by indirectly attacking Hanlon's opinion after January of 2003. This Court finds that while the ALJ did not give the specific weight he assigned to Hanlon's opinion after January 2003, he did analyze

11

the treating-source opinion weighting factors of 20 C.F.R.§ 404.1527. First, he noted the specialization of the treating source by referring to Dr. Hanlon as Plaintiff's "hand surgeon." (Tr. 19.) Second, he noted the frequency of examination with Dr. Hanlon by stating that "[Plaintiff] initially had appropriate treatment for his hand injury, but after October 2002, not to the degree one would expect for a disabling impairment." (Tr. 20.) Third, he noted the nature and extent of the treatment by indicating that Hanlon's treatment after a pin is removed in October of 2002 "was primarily for irritation due to the internal fixation, some of which was ultimately removed." (Tr. 19.) Fourth, the ALJ recognized the relevant evidence presented by Dr. Hanlon by giving controlling weight to all the "clinical findings" supporting his opinion up until Plaintiff's visits became infrequent and focused on post-surgery irritation from Plaintiff's pins, which Dr. Hanlon repeatedly suggested removing. (Tr. 19-20.) Last, the ALJ pointed out how Dr. Hanlon's post-2003 opinion was inconsistent with the record as a whole. For example, he pointed out that in March 2004 Plaintiff told another doctor – Dr. Seo – that "he no longer went up on roofs due to his *back and leg problems*" as opposed to any thumb problem. (Tr. 19.)[4] Thus, the ALJ's non-conformity with the treating physician rule was harmless because he implicitly satisfied the rule by analyzing the weighting factors of 20 C.F.R. § 404.1527, and giving good reasons for rejecting the treating source's opinion after January 2003. Therefore, while the ALJ may not have fully satisfied all of the procedural requirements of the treating source rule, the Court finds his error was harmless.

---

[4] In addition, he pointed out that Hanlon's post-2003 opinion was not consistent with Plaintiff's daily activities, many of which involved use of his hands, "including personal care, shopping, driving, drinking, using the computer and playing chess." (Tr. 20.) However, the Plaintiff completed his "Function Report" for his disability claim on April 9, 2006. (Tr. 146-53.) Therefore, this Court is unable to determine if, as the ALJ suggests, Hanlon's post-2003 opinion was inconsistent with Plaintiff's post-2003 daily activities because Plaintiff may be describing his daily activities from 2006 in his Function Report. (*Id.*)

*2. Substantial Evidence Supports the ALJ's Residual Functional Capacity Assessment*

Plaintiff argues that substantial evidence does not support the ALJ's residual functional capacity ("RFC") assessment of skilled work at a medium exertion level. (Dkt. 9, Pl.'s Mot. Summ. J. at 12-14.) The Commissioner responds that substantial evidence supports the ALJ's RFC taking into account the ALJ's assessment of Plaintiff's treating source and Plaintiff's credibility. (Dkt. 14, Def.'s Mot. Summ. J. at 8.)

This Court agrees with the Commissioner. The ALJ's assessment of Plaintiff's treating source is discussed in detail above. Since the ALJ found that Plaintiff's "healing was complete by January 10, 2003," an RFC of skilled work at a medium exertion level – the category of Plaintiff's previous job – was appropriate. (Tr. 19-20.) This is particularly true since Dr. Hanlon never intended permanent restrictions for Plaintiff. (Tr. 197-98) At most, Dr. Hanlon intended Plaintiff's restrictions to last until September 2, 2003. (*Id*.) Therefore, the ALJ essentially adopts Dr. Hanlon's opinion, but moves the date of the lifting of restrictions from September 2, 2003 to January 10, 2003. (Tr. 19-20, 197-98.) Given his analysis of the weighting factors of 24 C.F.R. § 404.1527, this Court finds this determination supported by substantial evidence.

The ALJ's assessment of Plaintiff's credibility also supports this RFC. As discussed briefly above, the ALJ found that Plaintiff's infrequent visits to Dr. Hanlon after October of 2002 were not illustrative of what "one would expect for a disabling impairment." (Tr. 20.) Indeed, Plaintiff's two visits to Dr. Hanlon in 2003 focused on post-surgery irritation from Plaintiff's pins, which Dr. Hanlon repeatedly suggested removing. (Tr. 19-20.) Accordingly, substantial evidence supports the ALJ's determination that Plaintiff could return to work before his date last insured, and prior to the expiration of a year pursuant to 42 U.S.C. § 423(d)(1)(A). Thus, the RFC and the ALJ's ultimate

finding were appropriate.

### G. Conclusion

For the foregoing reasons, this Court finds that while the ALJ failed to fully comply with the procedural requirements of the treating source rule, this error was harmless. Accordingly, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED, that Defendant's Motion for Summary Judgment be GRANTED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner be AFFIRMED.

## III. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2).

Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

Date: October 6, 2011

s/Laurie J. Michelson
Laurie J. Michelson
United States Magistrate Judge

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on October 6, 2011.

s/Jane Johnson
Deputy Clerk